UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Huff and Senior Judge Annunziata


STEPHANIE LEE TAYLOR

MEMORANDUM OPINION*

v.       Record No. 0518-19-4

PER CURIAM
OCTOBER 1, 2019

CITY OF ALEXANDRIA DEPARTMENT
  OF COMMUNITY AND HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Devanshi Patel, on brief), for appellant.

(Joanna Anderson, City Attorney; George McAndrews, Senior
Assistant City Attorney; Frank G. Aschmann, Guardian *ad litem* for
the minor children, on brief), for appellee.


Stephanie Taylor (mother) appeals the orders terminating her parental rights and approving

the foster care goals for two of her children. Mother argues that the circuit court erred by failing to

find that termination of her parental rights under Code § 16.1-283(B) and (C) was in the best

interests of the children, and therefore, erred in finding that the evidence was sufficient to terminate

her parental rights. She further asserts that the circuit court failed to make an independent finding

that the children were abused or neglected. Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of

the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to N.J., A.A., and E.B.[2]  In 2014, the City of Alexandria Department of Community and Human Services (the Department) removed then-ten-year-old N.J. and one-year-old A.A. from mother's care because of concerns about domestic violence and substance abuse in the home.[3]  The children ultimately were returned to mother's care in June 2015.

In July 2016, the Department received a report that A.A.'s father, Bashir Altamimi, was arrested for violating a protective order and possessing heroin while A.A. was in his care.  A.A. was returned to mother's care.  The Department provided ongoing services to the family.

In February 2017, mother called Stephen Beyer, E.B.'s father, for help because she had taken "too many pills."  After he helped her, Beyer decided to stay and supervise the children. Mother did not seek immediate medical care.

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] N.J. is not the subject of this appeal.  Mother's children have different fathers.

[3] E.B. was born in November 2016.

In the early morning hours of February 11, 2017, Beyer and mother started arguing, and Beyer called the police.[4] The police observed that mother was "very upset, emotional." The police officer who spoke with mother detected an odor of alcohol and noticed that mother's speech was slurred.[5] Mother told the police that she had taken "too many pills" earlier and volunteered to go to a hospital for a mental health evaluation. She later admitted to others, including the Department, that she had tried to overdose because she was having financial problems and domestic violence issues with Beyer. Mother had a history of drug and alcohol abuse, as well as mental health problems.[6]

After investigating the matter, the Department entered into several safety plans with the family. On February 22, 2017, the Department conducted a family partnership meeting and concluded that it was in the children's best interests to be removed from the home. Mother suggested that the children be placed with her cousin and her cousin's boyfriend; the Department approved the placement.[7] At the time of the removal, N.J. was twelve years old; A.A. was three years old; and E.B. was three months old.

On February 23, 2017, the Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered preliminary removal orders for N.J., A.A., and E.B. The JDR court also

---

[4] A.A. was with Altamimi at the time, even though Altamimi was supposed to have supervised visitation only.

[5] Mother denied being intoxicated.

[6] Mother had attempted suicide when she was twelve and seventeen years old. She started drinking alcohol when she was thirteen or fourteen years old and had used cocaine, ecstasy, and opiates as an adult. She developed a liver condition because of her alcohol and drug use.

[7] A few months after the children's placement with mother's cousin, the cousin informed the Department that she could no longer care for the children, so the family suggested mother's aunt and her husband as a possible placement. The Department placed the children with mother's aunt and her husband in mid-July 2017.

adjudicated the children to be at risk of abuse and neglect. On April 26, 2017, the JDR court entered dispositional orders, which were not appealed. At the same time, the JDR court also entered child protective orders and directed mother to cooperate with the Department, comply with all treatment recommended by the Department's providers, submit to random drug and alcohol tests, undergo substance abuse and psychological evaluations, sign all releases and authorizations, participate in family therapy and family partnership meetings, participate in individual counseling, and take all prescribed medications as directed.

The Department arranged for supervised visitation, and at first, mother regularly visited the children; however, over time, her visits decreased from almost daily to weekly to none.[8] Mother participated in individual therapy and group therapy, but on October 25, 2017, she was terminated from the program after missing four consecutive group sessions.

The Department informed mother that a goal of return home was not possible because of her history, her mental health, and the level of risk to which she exposed the children. Mother testified that "the thought of never getting [her] children back" made her very depressed, so she drank "heavily." In July 2017, mother was hospitalized after she attempted suicide again. Mother told the Department that she had attempted suicide after arguments with Beyer and Altamimi, who blamed her for the children being in foster care. Mother was hospitalized again on July 13, 2017, after suffering a seizure from withdrawal symptoms.

The Department changed the goal from return home to adoption for A.A. because of "the lack of confidence in . . . safely returning [A.A.] to his parents." The Department had explored the possibility of placing A.A. with a paternal relative who lived in Arizona, but the paternal relative did not complete the process with the Interstate Compact for the Placement of Children.

---

[8] After the JDR court terminated mother's parental rights in May 2018, she stopped visiting the children despite the Department's efforts to facilitate the visitation.

The Department's goal for E.B. was return home to her father.[9] Mother had not demonstrated the necessary stability to provide a safe home for the children.

On May 22, 2018, the JDR court terminated mother's parental rights to N.J., A.A., and E.B., and approved goals of adoption for N.J. and A.A. Mother appealed the matters to the circuit court.[10]

On March 1, 2019, the parties appeared before the circuit court. The Department informed the court that E.B. was living with her father, so there was no pending permanency plan for E.B. N.J. was fourteen years old and did not want his mother's parental rights to be terminated, so the Department was no longer seeking termination of mother's parental rights to N.J.

The Department presented evidence that mother had not been engaged in consistent mental health treatment. The Department remained concerned that mother "revert[ed] to suicide attempts" when situations became "very stressful." Mother had not made any progress in developing coping skills. Neither mother nor Altamimi had completed any services to address domestic violence.

Mother testified about her substance abuse and mental health issues. She acknowledged drinking "heavily" after the children were removed from her care because she was depressed. She also admitted that she had consumed alcohol while the children were present, but rationalized that there was another adult available to care for them.

Mother testified that she was hospitalized on January 13, 2019, for nine days because she was depressed and had suicidal thoughts. After her hospitalization, mother started seeing a

_____

[9] Beyer had complied with the Department's requests and demonstrated an ability to care for E.B.

[10] The JDR court also terminated Altamimi's parental rights and approved the foster care goal of adoption for A.A. Altamimi appealed the matters to the circuit court.

psychiatrist and therapist and attending group meetings. She stated that she was learning strategies to deal with pressure and creating a support network. She also was working with Workforce to find employment.

Mother admitted that she had not seen the children since May 2018, but had stayed in contact with them through Facebook and telephone calls. She explained that she was very depressed and did not want the children to see her in that state. She had recently requested to see them because she felt she was "doing better."

Altamimi testified about his substance abuse. He reported that he had not used drugs or had any positive drug screens since August 2017. At the time of the circuit court hearing, Altamimi was on probation. He was ordered to remain sober and was randomly drug tested. He attended two drug treatment classes each week and participated in individual therapy once per month. He worked sixty hours per week at two different jobs.

Altamimi had had supervised visitation with A.A. once every two weeks since his release from incarceration. Altamimi had asked for more frequent visitation, but the Department denied his request.

The Department requested that the circuit court terminate mother and Altamimi's parental rights, which they opposed. After hearing the parties' closing arguments, the circuit court terminated mother's parental rights to A.A. and E.B. under Code § 16.1-283(B) and (C)(2).[11] It also approved the goal of adoption for A.A. and the goal of return home for E.B. This appeal followed.

---

[11] The circuit court also terminated Altamimi's parental rights to A.A. and approved the foster care goal of adoption. Altamimi appealed the circuit court's rulings. See Altamimi v. City of Alexandria Cmty. & Human Servs., Record No. 0858-19-4.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court failed to make "an explicit finding" that termination of her parental rights was in the children's best interests, so the circuit court's ruling is "insufficient to support a finding of termination by clear and convincing evidence." The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states a parent's parental rights may be terminated if the court finds by clear and convincing evidence that termination is in the best interests of the children and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

First, we note that the circuit court's final orders included the following finding: "It is in the child's best interests that the residual parental rights of the above-named parent be terminated." "[A] trial court speaks only through its written orders." City of Newport News

Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 561 (2003) (quoting Walton v. Commonwealth, 256 Va. 85, 94 (1998)). Therefore, contrary to mother's arguments, the circuit court made "the threshold finding" that termination of parental rights was in the children's best interests.

Second, we find that the circuit court's ruling from the bench reflected that it considered the best interests of the children and mother's ability to care for them. "[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71 (2005) (quoting Winslow, 40 Va. App. at 562-63). The circuit court explained that "there are just some folks who, often through no fault of their own, have so much noise going on in their lives that taking care of themselves is enough of a challenge without injecting the needs and the care of folks who are otherwise helpless into the picture." The circuit court concluded "that's what we have here." The circuit court found that "the parents have mental and emotional illness and intellectual disability such that there's no reasonable expectation that they'll be [able to] undertake the responsibility for the care of the children." Mother had a history of mental illness. In February and July 2017, she was hospitalized for attempting suicide and again in January 2019, just a few weeks before the circuit court hearing, for having suicidal thoughts. She did not regularly attend counseling while the children were in foster care. She further admitted that she was very depressed and did not visit with the children for months. Mother had not demonstrated that she had developed coping skills and was capable of parenting the children safely.

In addition, the circuit court found that the parents "have habitually abused intoxicating drugs and liquors, to the point where it makes it difficult or impossible to care for the children." Mother admittedly consumed "too many pills" when the children were asleep when she

attempted to commit suicide in February 2017. She further acknowledged that she drank "heavily" while the children were in foster care because she was depressed. Mother had not shown that she could remain sober and was capable of caring for her children.

By the time of the circuit court hearing, the children had been in foster care for approximately two years. The circuit court held that "[w]ith each day that goes by with them not having the benefit of the stability that we all need to put our lives together, they become one more day of being disadvantaged." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Mother also argues that the circuit court failed to make an independent finding that the children were abused or neglected. Mother did not appeal the JDR court's dispositional orders, which followed the earlier adjudicatory orders finding that the children were at risk of abuse or neglect. Code § 16.1-278.2(D) establishes that a dispositional order entered by a juvenile and domestic relations district court in an abuse or neglect and removal case "is a final order from which an appeal may be taken" to the circuit court. See also Code § 16.1-296(A) (providing, in pertinent part, that an appeal of such an order "may be taken to the circuit court within 10 days from the entry of . . . [such] order"). Since mother did not appeal the JDR court's dispositional order to the circuit court, she has waived any argument regarding the finding of abuse or neglect. We also note that mother did not object to the Department submitting into evidence copies of the adjudicatory and dispositional orders from the JDR court.

Furthermore, the court's final orders state that the circuit court found by clear and convincing evidence that "the neglect or abuse suffered by such child presents a serious and

substantial threat to his or her life, health or development" and that it "is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his or her parent within a reasonable period of time." As noted above, the circuit court "speaks only through its written orders." Winslow, 40 Va. App. at 561 (quoting Walton, 256 Va. at 94).

Contrary to mother's arguments, the circuit court did not err in terminating her parental rights to A.A. and E.B. under Code § 16.1-283(B). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in also terminating mother's parental rights under Code § 16.1-283(C)(2).

CONCLUSION

For all of the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.